UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL A. WILSON,<br>Administrator of Ohio<br>Operating Engineers Health<br>and Welfare Plan, Ohio<br>Operating Engineers Pension<br>Fund, Ohio Operating Engineers<br>Apprenticeship and Training Fund,<br>and Ohio Operating Engineers Education<br>and Safety Fund<br><br>1180 Dublin Road<br>Columbus, Ohio 43212,<br><br>and<br><br>Trustees of the Ohio Operating<br>Engineers Health and Welfare<br>Plan, Ohio Operating Engineers<br>Pension Fund, Ohio Operating<br>Engineers Apprenticeship and Training Fund,<br>and Ohio Operating Engineers<br>Education and Safety Fund<br><br>1180 Dublin Road<br>Columbus, Ohio 43212,<br><br>Plaintiffs,<br><br>v.<br><br>Ebony Construction Co.<br>3510 Centennial Road<br>Sylvania, Ohio 43560-9738<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 2-17-CV<br><br>Judge<br><br>Magistrate Judge |

# COMPLAINT

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is based upon 29 U.S.C. §§ 1132(a)(3) and 1145, as the action arises from Defendant's violation of and continued refusal to comply with the terms and provisions of collectively bargained agreements, trust agreements, and employee-benefit plans. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and S.D. Ohio Civ. R. 82.1.

## COUNT I

2. The Trustees of the Ohio Operating Engineers Health and Welfare Plan (hereinafter referred to as the "Health and Welfare Trustees") are the duly appointed, qualified, and acting trustees of the trust established as part of the Ohio Operating Engineers Health and Welfare Plan by Amended Agreement and Declaration of Trust dated November 29, 1977, as amended, (hereinafter referred to as the "Health and Welfare Trust") between the Labor Relations Division of the Ohio Contractors Association, the Associated General Contractors of America, and other employer associations, and the International Union of Operating Engineers, Locals Nos. 18, 18A, and 18B, a labor organization representing employees in an industry affecting commerce. The Health and Welfare Trustees bring this action in their fiduciary capacity as trustees for and on behalf of the participants and beneficiaries of the Health and Welfare Trust. The Health and Welfare Trust constitutes an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. §§ 1002(1), (2), (3), and 29 U.S.C. § 1132. The plan is administered in Columbus, Ohio.

3. The Health and Welfare Trustees have authorized Carol A. Wilson, Administrator of the Ohio Operating Engineers Health and Welfare Plan, to bring this claim and

to seek the remedy prayed for on their behalf and on behalf of the participants and beneficiaries of the Health and Welfare Trust and employee benefit plan.

4. Ebony Construction Co. is an Ohio corporation with its principal place of business in Sylvania, Ohio, and at all relevant times has been engaged in an industry affecting commerce, i.e., contracting work.

5. Defendant is an employer engaged in commerce and in an industry affecting commerce within the meaning of 29 U.S.C. § 1003.

6. Defendant executed a Job Recovery Agreement and a short form Highway Heavy Construction Agreement both dated July 10, 1987 by the terms of which Defendant also became a party to the Agreement and Declaration of Trust (the "Health and Welfare Trust Agreement") that established the Ohio Operating Engineers Health and Welfare Plan, and became bound by the terms and conditions set forth therein. Copies of the signatory pages of the agreements are attached and marked "Exhibit A" and incorporated herein. These agreements contain provisions whereby Defendant agreed to make timely payments to the Health and Welfare Trustees for each employee covered by the agreement.

7. Defendant has failed to make timely payments to the Health and Welfare Trustees for each covered employee and has failed to perform the obligations imposed by the terms and conditions of the Job Recovery Agreement and the Ohio Highway Heavy Agreement dated July 10, 1987 and the Health and Welfare Trust Agreement.

8. The Trustees' Field Auditor audited Defendant's payroll records on September 20, 2017. This audit disclosed unpaid contributions for the period July 1, 2012 to August 1, 2017, owed to the Health and Welfare Trustees. Defendant is delinquent in making contributions to the Health and Welfare Trustees in the total amount of $51,088.28.

## COUNT II

9. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 8 above as fully as if rewritten herein and further state that the Trustees of the Ohio Operating Engineers Pension Fund (hereinafter referred to as the "Pension Trustees") are the duly appointed, qualified, and acting trustees of the trust established as a part of the Ohio Operating Engineers Pension Fund by Amended Agreement and Declaration of Trust dated November 29, 1977, as amended, (hereinafter referred to as the "Pension Trust") between the Labor Relations Division of the Ohio Contractors Association, the Associated General Contractors of America, and other employer associations, and the International Union of Operating Engineers, Locals Nos. 18, 18A, and 18B, a labor organization representing employees in an industry affecting commerce. The Pension Trustees bring this action in their fiduciary capacity as trustees for and on behalf of the participants and beneficiaries of the Pension Trust. The Pension Trust constitutes an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. §§ 1002(1), (2), (3), and 29 U.S.C. § 1132. The plan is administered in Columbus, Ohio.

10. The Pension Trustees have authorized Plaintiff Carol A. Wilson, Administrator of the Ohio Operating Engineers Pension Fund, to bring this claim and to seek the remedy prayed for on their behalf, and on behalf of the participants and beneficiaries of the Pension Trust and employee benefit plan.

11. Under the provisions of the agreements described in paragraph 6 above, Defendant became a party to the Agreements and Declaration of Trust (the "Pension Trust Agreement") that established the Ohio Operating Engineers Pension Fund, and became bound by the terms and conditions set forth therein. The Job Recovery Agreement and the Ohio Highway Heavy Agreement dated July 10, 1987 and the Pension Trust Agreement contain provisions

4

whereby Defendant agreed to make timely payments to the Pension Trustees for each employee covered by the agreements.

12. Defendant has failed to make timely payments to the Pension Trustees for each covered employee and has failed to perform the obligations imposed by the terms and conditions of the Job Recovery Agreement and the Ohio Highway Heavy Construction Agreement dated July 10, 1987 and the Pension Trust Agreement.

13. The Trustees' audit disclosed unpaid contributions owed for the period July 1, 2012 to August 1, 2017, to the Pension Trustees. Defendant is delinquent in making contributions to the Pension Trustees in the total amount of $40,413.00.

COUNT III

14. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 13 above as fully as if rewritten herein and further state that the Trustees of the Ohio Operating Engineers Apprenticeship and Training Fund (hereinafter referred to as the "Apprenticeship Trustees") are the duly appointed, qualified, and acting trustees of the trust established as a part of the Ohio Operating Engineers Apprenticeship and Training Fund by the Third Amended Agreement and Declaration of Trust dated December 31, 1992, as amended, (hereinafter referred to as the "Apprenticeship Trust") between the Labor Relations Division of the Ohio Contractors Association, the Associated General Contractors of America, and other employer associations, and the International Union of Operating Engineers, Locals Nos. 18, 18A, and 18B, a labor organization representing employees in an industry affecting commerce. The Apprenticeship Trustees bring this action in their fiduciary capacity as trustees for and on behalf of the participants and beneficiaries of the Apprenticeship Trust. The Apprenticeship Trust constitutes

an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. §§ 1002(1), (2), (3), and 29 U.S.C. § 1132. The plan is administered in Columbus, Ohio.

15. The Apprenticeship Trustees have authorized Plaintiff Carol A. Wilson, Administrator of the Ohio Operating Engineers Apprenticeship and Training Fund, to bring this claim and to seek the remedy prayed for on their behalf, and on behalf of the participants and beneficiaries of the Apprenticeship Trust and employee benefit plan.

16. Under the provisions of the agreements described in paragraph 6 above, Defendant became a party to the Agreements and Declaration of Trust (the "Apprenticeship Trust Agreement") that established the Ohio Operating Engineers Apprenticeship and Training Fund, and became bound by the terms and conditions set forth therein. The Job Recovery Agreement and the Ohio Highway Heavy Agreement dated July 10, 1987 and the Apprenticeship Trust Agreement contain provisions whereby Defendant agreed to make timely payments to the Apprenticeship Trustees for each employee covered by the agreements.

17. Defendant has failed to make timely payments to the Apprenticeship Trustees for each covered employee and has failed to perform the obligations imposed by the terms and conditions of the Job Recovery Agreement and the Ohio Highway Heavy Agreement dated July 10, 1987 and the Apprenticeship Trust Agreement.

18. The Trustees' audit disclosed unpaid contributions for the period July 1, 2012 to August 1, 2017, owed to the Apprenticeship Trustees. Defendant is delinquent in making contributions to the Apprenticeship Trustees in the total amount of $5,031.46.

COUNT IV

19. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 18 above as fully as if rewritten herein and further state that the Trustees of the Ohio Operating

Engineers Education and Safety Fund (hereinafter referred to as the "Education and Safety Trustees") are the duly appointed, qualified and acting trustees of the trust established as a part of the Ohio Operating Engineers Education and Safety Fund by Amended Agreement and Declaration of Trust dated May 9, 1992, as amended, (hereinafter referred to as the "Education and Safety Trust") between the Labor Relations Division of the Ohio Contractors Association, the Associated General Contractors of America, and other employer associations, and the International Union of Operating Engineers, Locals Nos. 18, 18A, and 18B, a labor organization representing employees in an industry affecting commerce. The Education and Safety Trustees bring this action in their fiduciary capacity as trustees for and on behalf of the participants and beneficiaries of the Education and Safety Trust. The Education and Safety Trust constitutes an "employee benefit plan" or "plan" within the meaning of 29 U.S.C. §§ 1002(1), (2), (3), and 29 U.S.C. § 1132. The plan is administered in Columbus, Ohio.

20. The Education and Safety Trustees have authorized Plaintiff Carol A. Wilson, Administrator of the Ohio Operating Engineers Education and Safety Fund, to bring this claim and to seek the remedy prayed for on their behalf, and on behalf of the participants and beneficiaries of the Education and Safety Trust.

21. Under the provisions of the agreements described in paragraph 6 above, Defendant became a party to the Agreements and Declaration of Trust (the "Education and Safety Trust Agreement") that established the Ohio Operating Engineers Education and Safety Fund, and became bound by the terms and conditions set forth therein. The Job Recovery Agreement and the Ohio Highway Heavy Agreement dated July 10, 1987 and the Education and Safety Trust Agreement contain provisions whereby Defendant agreed to make timely payments to the Education and Safety Trustees for each employee covered by the agreements.

22. Defendant has failed to make timely payments to the Education and Safety Trustees for each covered employee and has failed to perform the obligations imposed by the terms and conditions of the Job Recovery Agreement and the Ohio Highway Heavy Agreement dated July 10, 1987 and the Education and Safety Trust Agreement.

23. The Trustees' audit disclosed unpaid contributions for the period July 1, 2012 to August 1, 2017, owed to the Education and Safety Trustees. Defendant is delinquent in making contributions to the Education and Safety Trustees in the total amount of $601.21.

COUNT V

24. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 23 above as fully as if rewritten herein and further state that the Trust Agreements, Defendant's collectively bargained agreements, and the rules and regulations adopted by the Pension and Health and Welfare Trustees on May 26, 1989, by the Apprenticeship Trustees on July 12, 1989 and by the Education and Safety Trustees on April 25, 1989, specifically provide that the Trustees shall be entitled to recover interest of 1.5 percent per month (18 percent per annum) times the unpaid balance of delinquent contributions in addition to the unpaid contributions. The assessment of this interest is further authorized by 29 U.S.C. § 1132(g)(2)(B), which provides that in any action brought by a fiduciary for or on behalf of a plan to collect contributions due the plan, in which a judgment in favor of the plan is awarded, the Court must award the plan, in addition to the unpaid contributions, interest on the unpaid contributions at the rate set by the plan.

25. Pursuant to the Trust Agreements, collectively bargained agreements, rules and regulations adopted by the Trustees, and federal law, Defendant owes the Trustees of all four funds interest on the audit findings in the amount of $23,675.40, if paid on or before December

15, 2017, plus 48.58 per day thereafter that the audit findings remain unpaid, and interest on the unaudited delinquencies.

COUNT VI

26. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 25 above as fully as if rewritten herein and further state that the Trust Agreements, Defendant's collectively bargained agreements, and the rules and regulations adopted by the Trustees provide that the Trustees shall be entitled to recover statutory interest at the rate of 18 percent per annum on the unpaid contributions in addition to the unpaid contributions. The assessment of this statutory interest is further authorized by 29 U.S.C. § 1132(g)(2)(C), which provides that in any action brought by the fiduciary for or on behalf of a plan to collect contributions due the plan, in which a judgment in favor of the plan is awarded, the court must award the plan, in addition to the unpaid contributions and interest under § 1132(g)(2)(B), an amount equal to the greater of (i) interest on the unpaid contributions or (ii) statutory interest in an amount specified in the employee-benefit plan not in excess of 20 percent of the unpaid contributions.

27. Pursuant to the Trust Agreements, collectively bargained agreements, rules and regulations adopted by the Trustees, and federal law, Defendant owes the Trustees of all four funds, in addition to the amounts specified in Counts I through V of this Complaint, an amount equal to the greater of (i) interest on the unpaid contributions or (ii) statutory interest on the unpaid audit findings, calculated at the rate of 18 percent per annum on the unpaid audit findings (up to a "cap" of 20 percent of the unpaid audit findings), which amount is presently $23,675.40, if paid on or before December 15, 2017, plus 48.58 per day thereafter that the audit findings remain unpaid and interest on the unaudited delinquencies.

## COUNT VII

28. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 27 above as fully as if rewritten herein and further state that the Trust Agreements, Defendant's collectively bargained agreements, and the rules and regulations adopted by the Trustees provide that the Trustees shall be entitled to recover all costs of collection, including reasonable attorneys fees, in addition to the delinquent contributions owed by Defendant. Further, 29 U.S.C. § 1132(g)(2)(D) specifically provides that in any action brought by a fiduciary for or on behalf of a plan to collect contributions due the plan, in which a judgment in favor of the plan is awarded, the court must award the plan, in addition to the unpaid contributions, reasonable attorneys fees and costs of the action.

29. Pursuant to the Trust Agreements, collectively bargained agreements, rules and regulations adopted by the Trustees, and federal law, Defendant owes the Trustees of all four funds reasonable attorneys' fees as set by the court and court costs.

WHEREFORE, Plaintiff Health and Welfare Trustees demands judgment against Defendant for the sum of $51,088.28, plus whatever sums are found owing pursuant to subsequent audits and monthly reports for which contributions have not been paid;

WHEREFORE, Plaintiff Pension Trustees demands judgment against Defendant for the sum of $40,413.00, plus whatever sums are found owing pursuant to subsequent audits and monthly reports for which contributions have not been paid;

WHEREFORE, Plaintiff Apprenticeship Trustees demands judgment against Defendant for the sum of $5,031.46, plus whatever sums are found owing pursuant to subsequent audits and monthly reports for which contributions have not been paid;

WHEREFORE, Plaintiff Education and Safety Trustees demands judgment against the Defendant for the sum of $601.21, plus whatever sums are found owing pursuant to subsequent audits and monthly reports for which contributions have not been paid;

WHEREFORE, all Plaintiffs herein demand judgment against Defendant for interest in the amount of $23,675.40, plus $48.58 per diem for every day after December 15, 2017, in which the audit findings and/or monthly contributions remain unpaid, plus whatever sums are found owing pursuant to subsequent audits and monthly reports for which contributions have not been paid; and

WHEREFORE, all Plaintiffs herein demand judgment against Defendant for an amount equal to the interest on the unpaid contributions in the amount of $23,675.40, plus $48.58 per diem for every day after December 15, 2017, in which the audit findings and/or monthly contributions remain unpaid; plus all costs of collection including reasonable attorneys' fees as fixed by the Court; plus court costs; and such other and further legal or equitable relief to which they may be entitled.

Respectfully submitted,

/s/ Daniel J. Clark
Daniel J. Clark, Trial Attorney
Ohio Supreme Court No. 0075125
Jesse A. Meade, of Counsel
Ohio Supreme Court No. 0095983
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Post Office Box 1008
Columbus, Ohio 43216-1008
(614) 464-6436

Attorneys for Plaintiffs,
Carol A. Wilson, et al.

Exhibit A

03530



# AGREEMENT

This Agreement entered into this _18_ day of _July_, 198_7_, by and between _Stony Construction Co. Inc._ hereinafter called the "Company" of _Sylvania, Ohio 43560_, Ohio and the International Union of Operating Engineers, Local 18, 18A, 18B and 18RA, AFL-CIO, hereinafter called the "Union."

The parties agree:

1) The Company is not a member of any employer bargaining group who has a labor agreement with the Union.

2) The Company recognizes the Union as the exclusive bargaining agent of all its employees engaged to work within the trade jurisdiction of the Operating Engineers and who are engaged in Highway Heavy Construction for the Company.

3) The Company is not represented by any employer bargaining unit nor has any employer bargaining unit authority to act as an agent for the Company, however, the Company agrees to adopt and accept all the terms, wage rates and conditions of the _86/89_ Ohio Highway Heavy Agreement except as modified herein. The Company further agrees to make contributions to the Health and Welfare Fund, Pension Fund, Apprenticeship Fund and Safety Training and Educational Trust Fund as outlined in said Ohio Highway Heavy Agreement.

4) a. Both parties hereto recognize that by the execution of this Agreement, the Company does not become a member of any multi-employer bargaining unit nor does it assign its bargaining rights to any such unit. The Company is not bound or obligated by the provisions of Article X of the Agreement referred to in Paragraph (3) above. Both parties agree all provisions of Article X are deleted from the Agreement with respect to the Company signatory hereto.

b. With the exception of Article V, both parties agree that all reference to any employer bargaining unit shall be deleted from the Agreement of _86/89_ Ohio Highway Heavy Agreement.

c. It is further agreed by and between the undersigned Company and the International Union of Operating Engineers, Local 18, 18A, 18B, and 18RA that Article XV, Paragraph 100 through and inclusive of Paragraph 102, are not applicable and, therefore, are not binding on the parties.

5) A copy of the _86/89_ Ohio Highway Heavy Agreement is attached hereto and made part hereof except as modified above.

This Agreement shall be effective as of the date set forth and shall remain in full force and effect unless modified by mutual agreement of the parties until expressly terminated by notice in writing from one party to the other party at least sixty (60) days prior to its anniversary date.

Executed at _Sylvania_, Ohio, as of the date first above written.

FOR THE COMPANY

Name: _Stony Construction Co. Inc._
Address: _3510 Centennial Rd._
Telephone Number: _(419) 841-3435_
Authorized Representative

FOR THE UNION

Business Manager: _Frank Miller_
President
District Representative

**International Union of Operating Engineers, Local 18, 18A, 18B, 18RA, AFL-CIO**
# JOB RECOVERY AGREEMENT

CODE No. 5-22520
NEW ____ OLD ✓
CODE No. CHECKED
ASSIGNED BY FCW

This Agreement entered into this _____ day of _____, 198___, by and between _____ WPAE _____, hereinafter called the "Employer" of _____, and the International Union of Operating Engineers, Local 18, 18A, 18B and 18RA, AFL-CIO, hereinafter called the "Union," on behalf of its Operating Engineers, which Agreement shall be known as the JOB RECOVERY AGREEMENT effective June 1, 1986 and shall be terminated without automatic renewal on May 31, 1989. As a condition precedent to execution of this Agreement, the Employer must execute another agreement with the Union covering highway heavy construction work which has been reduced to writing and is known as the Ohio Highway Heavy Agreement between the Union and the Labor Relations Division of the Ohio Contractors Association, or any "short form" adaptation of the aforestated Agreement, hereinafter called the "Master Agreement."

Whereas, the Union and the Employer desire to reclaim a certain portion of construction work which has over the years been taken over by non-union competition; and

Whereas, the Union and the Employer both agree that these construction projects involve both private and public funding;

The parties agree as follows:

1) This agreement is not applicable in Cuyahoga, Lake and Geauga Counties.

2) All the terms and conditions contained in the aforestated "Master Agreement," which are not modified by this Agreement, are applicable and binding between the parties and are adopted herein as though fully rewritten.

3) This Agreement is applicable on all private construction work projects only where the total construction contracts let on that project are one million, five hundred thousand dollars ($1,500,000.00) or less. Private construction projects are those construction projects which are not financed by any government tax dollars, or Industrial Revenue Bonds and includes all snow removal.

4) This Agreement is also applicable on all Prevailing Wage Bridge Projects where the total construction project value is one million dollars ($1,000,000.00), or less; on all other prevailing wage projects where the total construction value of the project is five hundred thousand dollars ($500,000.00) or less, and on the following government financed projects without regard to dollar value limitations:

4a) All Ohio Department of Natural Resources reclamation projects;
4b) All HUD projects

5) The Union's Operating Engineers working on private construction work, government financed projects, and Prevailing Wage Bridge Projects will be paid two hours show-up time and a full hour's pay for any part of an hour worked after the first two hours worked. Time and one-half the hourly rate will be paid for all hours worked over forty (40) hours per week and all hours worked on Saturday. Double time will be paid for all hours worked on Sundays and Holidays.

6) The hourly wage rate to be paid to Operating Engineers working on private construction projects, as defined in paragraph 3, shall be $11.25 per hour, plus all fringe benefit payments set forth in the "Master Agreement."

7) The hourly wage rate to be paid to Operating Engineers working on Prevailing Wage Projects, as defined in paragraph 4, shall be the applicable hourly rates, plus all fringe benefits set forth in the "Master Agreement."

8) The hourly wage rate to be paid to Operating Engineers working on government financed projects, as defined in paragraph 4(a) and 4(b), shall be $11.25 per hour, plus all fringe benefit payments set forth in the "Master Agreement."

9) The first Operating Engineer hired on any of the projects as defined in paragraphs 3, 4, 4(a) and 4(b), shall be a journeyman Operating Engineer and thereafter the Employer may hire apprentices at a ratio of two apprentices to each journeyman Operating Engineer employed on the project. Apprentices hired must be third or fourth year apprentices only and will be paid $7.88 per hour and $9.00 per hour respectively, plus all fringe benefits set forth in the "Master Agreement."

10) This Agreement is not subject to the "Most Favored Nations Clause" contained in the "Master Agreement" and the Employer agrees that neither it, nor any of its representatives, will attempt to invoke the "Most Favored Nations Clause" on any other projects outside the scope of this Agreement.

11) The Union reserves its right to strike any of the projects covered by this Agreement and is not subject to the restraints of the "no-strike-grievance/arbitration" clause contained in the "Master Agreement."

12) None of the terms of this Agreement are applicable on any of the projects otherwise qualifying if either the Carpenters, Teamsters, Laborers or Cement Masons employed on these projects are not working under a Job Recovery Agreement. In such event, the terms of the "Master Agreement" are applicable on these projects. In the event that any of these crafts employed on these projects are working under a Job Recovery Agreement at hourly wage rates greater than those contained herein, the Operating Engineers shall receive that higher hourly wage rate, but not to exceed the hourly wage rate contained in the "Master Agreement." These higher hourly wage rates shall be paid to the Operating Engineers for all hours worked by the other craft on the project while Operating Engineers were also employed and working on the project.

13) Any subcontractors, or equipment rental contractors, retained by the Employer on these projects, who employ Operating Engineers must execute this Agreement and execute the "Master Agreement" before the subcontractor, or equipment rental contractor begins work on the project.

14) Any Operating Engineer employed on any of these projects shall be paid their regular "Master Agreement" hourly wage rate for all hours worked on and off the project, if on the same day, he/she is employed two hours or more on work outside the scope of this Agreement, which is covered under the "Master Agreement."

15) Notwithstanding any other provisions of this Agreement, any Operating Engineer, or Operating Engineer crews (operator and oiler) working under the "Master Agreement" weekly pay and wage provisions assigned to work on projects within this Agreement, shall continue to work under the weekly pay and wage provisions of the "Master Agreement" until those provisions have been satisfied. After compliance with the weekly pay and wage provisions, all the terms of this Job Recovery Agreement shall then become applicable.

16) Operating Engineers shall not be forced to work under this Agreement and the Employer agrees that any Operating Engineer expressing unwillingness to work under this Agreement shall be laid off for "lack of work" and said reason shall also be noted on the Union provided termination slip and will not later be challenged by the Employer.

17) This Agreement is only applicable to projects bid after the date of acceptance set forth hereon.

18) Oilers shall be employed on those Job Recovery Projects when such need is determined by the Employer. However, should a backhoe two (2) yard capacity or over be used on a Prevailing Wage Project of five hundred thousand dollars ($500,000.00) or less, as defined in paragraph 4, an oiler will be required.

19) Where the dollar limitation on any construction project as defined in paragraphs 3 and 4 exceed the dollar limitation, the Employer may request, in writing, prior to bid and the Union District Representative may agree prior to bid in writing, to extend the terms of this Job Recovery Agreement to that project. The Union District Representative shall have sole discretion in this matter.

In consideration of the benefits to be derived and other good and valuable consideration the parties hereto execute this Agreement on the date and at the location heretofore set forth.

**On Behalf of the Employer:**

Name _____
Address _____
Phone Number _____
Authorized Employer Representative

**On Behalf of The International Union of Operating Engineers Local 18, 18A, 18B and 18RA, AFL-CIO:**

_____
Frank J. Miller, Business Manager

_____
James H. Gardner, President

_____
District Representative

FRINGE BENEFIT OFFICE COPY